**Walter Eugene MORSE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 66 C 389(2).**

United States District Court
E. D. Missouri, E. D.

Jan. 25, 1967.

Walter Eugene Morse, pro se.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for respondent.

MEMORANDUM

MEREDITH, District Judge.

This matter is pending on motion of the petitioner under 28 U.S.C. § 2255 to set aside the judgment and sentence in case No. 57 Cr. 46.

The petitioner was given three consecutive sentences of four years each in 1957 on his plea of guilty to each of the three counts of an information charging violations of 18 U.S.C. § 2115 in the burglary of post offices at Dillard, at Safe, and at Davisville, Missouri. Thereafter, he filed a number of motions to set aside these sentences and to withdraw his plea of guilty, which were denied by the district court.

On November 1, 1962, a hearing was held on defendant's motion to vacate sentence on the grounds that he was induced to make a confession to the Post Office Inspector of the three burglaries upon the representations by the Post Office Inspector that he would get only a single four-year sentence and that the judge had assured the Post Office Inspector that he would impose such a sentence. The petitioner at that hearing was represented by experienced trial counsel, the Court gave him a great deal of latitude, and in effect, practically retried the three burglary cases. The motion to set aside the sentence was denied, 215 F.Supp. 398, and affirmed by the Eighth Circuit on appeal, 324 F.2d 80.

This present motion filed by the petitioner to vacate sentence and judgment alleges that at the hearing on No-

vember 1, 1962, the Post Office Inspector Romph committed perjury and accordingly another heaing should be held. Attached to the motion to vacate judgment and sentence are photostatic copies of letters to the petitioner from the Missouri State Highway Patrol, one of which states that "On December 26, 1956, evidence was received in our laboratory from Postal Inspector F. J. Romph. On January 4, 1957, this evidence was returned to him." The perjury which the petitioner alleges Romph committed in the hearing is this: During the course of questioning by petitioner's attorney, Post Office Inspector Romph testified that he had three conversations with Mr. Morse, on December 22nd, 1956; January 8th, 1957; and February 7th, 1957. These conversations took place while the petitioner was in jail on a state charge at Steelville, Missouri, for a burglary alleged to have been committed in that county, and there were hold orders on petitioner from a number of other counties for other alleged burglaries in the area. The following took place during the questioning of Romph:

Tr. 10:

Q What occasioned you to have any discussion with the petitioner on December 22nd, 1956?

A Just the possibility that he might know something about the burglaries I was interested in.

Q You said just the possibility that he might know something about them?

A Yes, sir.

Q Did that mean that you had no evidence or no facts that in any way connected the petitioner with these burglaries?

A Yes, sir.

Tr. 11:

Q Mr. Romph, other than your conversation with the petitioner, you had no independent evidence or reason to believe that the petitioner had committed any post office robberies, is that true?

A Yes, sir.

Tr. 14–15:

Q Then you went there for the purpose of interviewing Mr. Morse in the hope that you could gain information as a result of which you could solve these burglaries, is that right?

A I talked with him to see if he might know anything about them, either directly or indirectly that he was willing to tell me.

\* \* \* \* \* \*

Q Now when you first talked with Mr. Morse on December 22nd, I believe you said that he told you that he could give you no information concerning these burglaries.

A Yes, sir.

Tr. 16:

Q Now between December the 22nd and January the 8th, did you yourself discover, or did any information come to you, that caused you to believe that Mr. Morse did have some knowledge of these store post office burglaries?

A No, sir.

Tr. 19:

Q Now from January 8, 1957 to February 7, 1957, did you independently acquire any evidence or did any evidence come to your knowledge that caused you to believe that Mr. Morse did have participation in any post office burglary?

A No, sir.

Q You talked with petitioner on February 7, 1957?

A Yes, sir.

Q And for the third time then you talked with him without having any independent reason to believe that the petitioner had in any wise participated in any post office burglary, is that true?

A Yes, sir.

Q In fact, on February 7th you had his two prior denials of participation.

A Yes, sir.

During the entire course of this testimony on November 1, 1962, Inspector Romph was testifying from notes he had

made from the file as to the occurrence back in 1957. These notes were examined by petitioner's attorney and Romph was sharply, extensively, and exhaustively questioned. Petitioner's theory is that in truth and in fact Romph did have independent evidence of petitioner's guilt and that he lied about it. Whatever information Romph had or did not have about petitioner's connection with the postal burglaries was immaterial to the hearing relating to whether or not he had made a promise to petitioner to see that he obtained only one four-year sentence. It must also be remembered that petitioner, having been charged with a series of state burglaries in the area where the post office burglaries were committed, would be and was at the time a likely candidate for the postal burglaries.

The Court, in order to complete the record of this matter, has required the government to obtain from the Missouri State Highway Patrol copies of their correspondence relating to this incident. One is a letter dated January 3, 1957, to Mont Turnbaugh, Sheriff of Crawford County, Steelville, Missouri, with a copy to F. J. Romph, Postal Inspector, stating that on December 26, 1956, the laboratory received from Romph the following specimens:

> "Specimen No. 1, one metal tire tool, taken from a car belonging to Walter E. Morse, Rolla, Missouri.

> "Specimen No. 2, two one inch bits, taken from a car belonging to Walter E. Morse, Rolla, Missouri.

> "Specimen No. 3, one block of wood marked 'Taylor Cabin'.

> "Specimen No. 4, one block of wood marked 'Davisville 12–22–56.' "

This letter further states that the mark on the block of wood marked "Taylor Cabin" was made by a tire tool or other instrument the same width as the metal tire tool, but it was not conclusive that it was the same tire tool. The letter continued that one of the holes in the block of wood from Specimen No. 4 had markings made with the rusty bit, Specimen No. 2.

Another letter from the State Patrol to the Sheriff of Crawford County, dated February 6, 1957, stated that on January 9, 1957, Romph relayed to the laboratory "Specimen No. 1, one knob from a safe at Dillard's Store." and "Specimen No. 2, tie rod iron from a car belonging to Walter Morse." An examination of these specimens showed that the tool markings on the knob had been made by tools similar to the tie rod iron, however, there wasn't sufficient detail markings present for a conclusive examination.

Considering the fact that the Post Office Inspector was testifying from notes and considering the rather weak nature of the evidence which the Postal Inspector received from the Missouri State Highway Patrol, the Court is of the opinion that the Inspector's testimony at the hearing on November 1, 1962, was not perjury and a review of the entire hearing in November 1962 shows that there is no basis for any relief under this motion for petitioner.

The evidence clearly showed that petitioner preferred the shorter federal sentence, even of twelve years, than the possibility of sentence in the Missouri Penitentiary under the Habitual Criminal Act and the many pending state burglary charges, which were not pursued after federal sentence.

Accordingly, the motion to vacate sentence will be denied without a hearing. The copies of the letters from the State Highway Patrol to Romph, dated January 3, 1957, and February 6, 1957, are appended to the order and made a part of the record.